Milligan J.,
delivered the opinion of the Court.
On the 6th of December, 1864, Wm. H. Earring-ton, acting as the agent of J. W. Eowler, by written agreement, for the consideration of $1,200, sold to M. J. Littlejohn and M. W. Robinson, the wood on a *285 lot, or tract of land, containing twenty acres, known as tbe “Fowler property, on the Kerr Tract,” near the Hernando plank road, in Shelby County, and also the rents of the above described land for the year 1865. One thousand dollars, as it appears from the written contract, was to be given for the growing timber on said land; and two hundred for the rent of the land. The $1,000, was to be paid at thirty days from the date of the contract; . and the remainder, except one hundred dollars, which was to be paid down, on the 25th of December, 1865.
Littlejohn and Robinson, agreed to take all risks arising from the presence of Military forces then in the country; and bound themselves to pay the consideration money, independent of every contingency, which might arise, except through the acts of the bargainor.
The covenants in the contract were not kept and performed; and Farrington, the agent, brought this action for the use of Fowler, on the written agreement, against Littlejohn and Robinson, to recover damages, etc.
The declaration contains two counts. The first is predicated upon the written contract, assigning breaches; and the second, on an account for the wood and timber sold and delivered by the plaintiff to the defendant, on the 6th of December, 1864, and rent of twenty acres of land, on the Kerr Tract, for the year 1865.
The defendant put in various pleas, upon which issues were joined. And on the trial, the plaintiff offered in evidence the written contract, which, upon objection, was rejected by the Court, on account of its not having been properly stamped. The plaintiff there *286 upon, took a non-suit as to the first count in tbe declaration, and proceeded with the trial on the second, or common count.
On the trial of the cause upon the second count, Farrington, the nominal plaintiff, was introduced as a witness for the real plaintiff, Fowler, who stated in substance, that, on the 6th of December, 1864, he made the contract by which the land mentioned in the declaration and the written agreement, was rented to the defendant for the year 1865, and that he sold them the privilege of cutting timber on said land. The terms of the contract were contained in the written agreement, which was drawn up and signed by the parties, in witnesses counting room. Witness kept the agreement, and the defendants were to call the next day, and pay the $100 agreed to be paid in hand, and execute their notes according to the stipulations in the agreement. They failed to call, but both Littlejohn and Robinson, after-wards promised to pay the $1,200, as agreed upon.
On cross-examination the witness was asked if the contract to which he had referred was in writing, and if the paper which had just, been offered in evidence under the first count in the declaration, and excluded by the Court, was the contract to which he referred; and he replied in the affirmative. The defendant then excepted to the competency of the witness’s statement, and moved that it be excluded from the jury, which the Court refused.
The jury found for the plaintiff, and assessed his damages at $1,200, for which judgment was rendered, and an appeal prosecuted to this Court.
*287 ’ The charge of the Circuit Judge is not excepted to, and the case turns principally upon his action in admitting parol evidence of the contents of the contract after it was shown to be in writing.
As a general propositi on, there is no principle better settled than that parol evidence can not be admitted to contradict or vary the terms, or to enlarge or diminish the obligation of a written instrument or deed, except upon grounds of fraud, accident, mistake, etc.: Richardson vs. Thompson, 1 Hum., 151 — 155; Wood vs. Goodrich, 9 Yer., 266.
But, admitting this general prinóiple, it is insisted, that it cannot be applied to the case under consideration. By the non-suit, as it is argued, the first count in the declaration, which was predicated on the written agreement, being surrendered, the case stands alone on the second, or common count, .for use and occupation, which, notwithstanding the „ written agreement, may well be proven by parol.
There is a class of cases somewhat allied, in principle, to the case under consideration, in which, if the written contract is void for want of a. proper stamp, an action may be maintained upon the common counts; and the plaintiff may recover, if he can prove his claim, without the aid of an unstamped writing. “And when the plaintiff,” says Judge Parsons in his valuable work on Contracts, 3 vol., 300, “has proved by witnesses, a case of implied or oral contract, he cannot be non-suited by the defendants producing an unstamped written instrument purporting to contain the terms of the contract.”
“But if the existence of the unstamped written con3 *288 tract/’ continues the learned author, “be brought out on cross-examination of a witness for the plaintiff, it seems that the latter will be non-suited; the absence of the writing being thus made an inherent defect in the case, which it is incumbent on him to get over.” See also, to the same effect, Chitty on Contracts, 127.
This doctrine, so far as it involves the power of the Court to dismiss, or order a non-suit, for the want of sufficient evidence to sustain the action, rests upon the common law, which, in that respect, has no application in this State.] In England, the common Law Courts constantly exercised this power; but no such power exists here. The Constitution of the State, art. 1, sec. 6, declares the right of trial by jury is inviolate; and the plaintiff has the right to have his evidence, whether slight or full, passed upon by the jury. Under our practice he has the right to judge whether his case is made out or not; and if he sees proper to let a verdict go against him, it his own folly, and for some purposes, as final and complete a disposition of his cause as if judgment had been rendered on a verdict found by a jury: Hunter vs. Se vier, 7 Yer., 134; Bacon vs. Parker, 2 Tenn., 55; also, Cochran vs. Brown, 1 Hum., 329-331.
But, ordinarily, where an English Judge would direct a non-suit for the want of evidence, a jury in this State, for the same reason, would generally return a verdict against the plaintiff. The only difference is, a non-suit is not a final bar to another action, while a verdict and judgment is a bar for the same cause of action between the same parties.
But, passing by the difference between our own and *289 tbe English practice on tbe subject of non-suits, and recurring to tbe doctrine relied on to sustain this action, as laid down by Parsons and Cbitty on Contracts, it is a little difficult to see tbe importance wbicb tbeir learned authors attach to tbe manner in wbicb tbe existence of a written contract is brought out. It would seem, on first view, that it was immaterial whether it appeared on tbe cross-examination of tbe plaintiff’s witness, or in.the course of tbe defendant’s evidence. Tbe ground of the distinction is certainly highly technical, and evidently drawn from tbe English cases, among wbicb, tbe case of Feilder vs. Ray, 6 Bingham, 332, appears to be a leading case, and in wbicb tbe reason of the distribution is attempted to be given. In that case, Ray engaged one Aldrich to print certain quantities of calico, and shortly after tbe process bad commenced, Aldrich assigned bis business and factory to Fielder, who completed tbe work and brought bis action to recover tbe value of tbe work. Tbe goods were delivered, and a great part of tbe work done after the plaintiff bad succeeded to tbe premises.
Ray insisted that bis contract was with Aldrich, and that be could not be held liable to tbe plaintiff for more than tbe portion of tbe work done by him subsequently to tbe assignment by Aldrich; and also, that be bad refused to allow tbe work to be proceeded with by tbe plaintiff until be had signed a written agreement, containing terms different from those wbicb tbe plaintiff sought to enforce. Tbe agreement was produced, and objected to by tbe plaintiff, and rejected by tbe Court for want of a stamp. Tbe jury found for tbe plaintiff, and on motion for a new trial, Chief Justice Tindal held, “that *290 after the plaintiff has proved by witnesses a case of implied or oral contract, he cannot be non-suited by the defendant producing an unstamped written instrument, purporting to contain the terms of the contract.”
In that case, it was insisted that the written document tendered in evidence on the part of the defendant, and rejected for want of a stamp, ought to have been received, at least for the purpose of non-suiting the plaintiff, on the ground that he had established by testimony, a contract of which there was evidence in writing. • And in commenting on this proposition, the learned Chief Justice took a distinction between evidence of a contract in writing, when brought out on cross-examination of the plaintiff’s witnesses, and when it comes out in the course of the defendant’s evidence: “If,” says he, “it appear by the testimony of the plaintiff’s witness, the absence of the writing is an inherent defect in the cause which it is incumbent on him to get over; whereas, if it appears from the defendant’s witness, it is an objection which the defendant must substantiate by the production of the instrument in the regular way: otherwise, this inconvenience might follow, — that the plaintiff might, on a mere assertion of the defendant, be non-suited for the non-production of a written instrument, which, if it had been produced, might turn out not to apply to the contract in question.”
The doctrine of this case, which appears to be supported by many other English cases, seems to be, that, if the plaintiff establishes his case of implied or oral contract by other evidence, and without disclosing the existence of a written contract, he cannot be non-suited, *291 notwithstanding tbe defendant, in the course of the evidence of his witnesses, shows the existence of sueh written contract. The latter is not, as it seems, allowed, without first having given the plaintiff notice to produce the written contract, to non-suit the former, unless he produces the contract in a form in which it can be received in evidence — that is, properly stamped.
On the other hand, it seems clear, if the written contract appears as part of the plaintiff’s case, and that the writing regulates the terms and conditions of the agreement, he must produce it; and when produced, if it cannot be read for want of a stamp, the plaintiff will be non-suited: Reed vs. Deere, B. & C., 266; Rex vs. Inhabitants of Rawden, 8 B. & C., 708. Also, Stephens vs. Peirney, 8 Taunt., 827; Doe, d., Wood vs. Morris, 12 East, 237; Brewer vs. Palmer, 3 Espinasses, 213; Doe, ex. dem., St. John vs. Hore, 2 Espinasses, 724.
But, how far the Courts in this State would feel bound to enforce this doctrine in a proper case arising under our stamp laws, is not necessary now to be determined. The facts of this case, however intended by the plaintiff’s counsel, do not present the question relied on in argument to sustain the action. Neither the use and occupation of the premises, nor the amount or value of the timber cut and removed therefrom, are proved by the plaintiff. The fact that Farrington rented the land mentioned in the first count in the declaration, under a contract to the defendants, and sold them the privilege of cutting timber off it for the year 1865, does not appear; but the witness says the terms of the contract are contained in the written agreement. If, then, we *292 treat the non-suit as totally cutting off the first count in the declaration, as we are perhaps hound to do, and as carrying away with it the written agreement declared on in it; and the trial on the second, or common count, as a suit wholly disconnected with the previous proceedings in the cause, the parol evidence offered under the second count is scarcely intelligible, without connecting it with the contents of the written agreement. The two hundred dollars which was agreed to be paid for the rents, is not otherwise proven than by reference to the written agreement; and this sum obviously constituted a part of the amount found by the jury.
It is plain, therefore, as well from the language of the witness, as from the finding of the jury, that the Court allowed the contents of the written contract, which he had just rejected as evidence, to be proven by the witness. In this there was error. No rule of evidence is better established than that the contents of a written contract or agreement cannot be proven, without laying grounds for the admission of such testimony: 1 Greenleaf’s Ev., secs. 275, 276; Kearby vs. Duncan, 1 Head, 397.
How the result might have been under proper aver-ments in the declaration, and legal evidence of the use and occupation of the premises, and the value of the timber cut and removed, we, as before remarked, do not feel called upon to determine. Nor do we wish to be understood as deciding, that, under the Stamp Acts, and the authority of the case of Govenor vs. Littlefield, 13 Allen’s Mass. R., 127, that the contract was not admissible as evidence. It was not offered, or rejected *293 by the Court, after the non-suit. On this point, however, we intimate no opinion.
The judgment must be reversed, and the cause remanded; with leave to both parties to amend their pleadings, if they desire to do so.