GREENE COUNTY TIRE AND SUPPLY, INC., Appellee,

*v.*

R. C. SPURLIN, Appellant.

(*Knoxville,* September Term (May Session), 1959.)

Opinion filed September 9, 1960.

190

O. C. ARMITAGE, JR., Greeneville, for appellant.

S. J. MILLIGAN, Greeneville, for appellee.

Mr. Justice Tomlinson delivered the opinion of the Court.

In June of 1958, Greeneville Tire and Recapping Company sold its assets, with certain minor exceptions of no importance in this case, to Greene County Tire and Supply, Inc., for a substantial cash consideration. All the stock in the selling corporation was owned by W. H. Gulley, Roy Marshall and R. C. Spurlin.

As part of the consideration, Marshall and Spurlin agreed, and it was so written into the contract which each, as well as the corporation, signed, that they would not engage directly or indirectly, either for themselves or as the agents or servants, in a similar business or as the owner of stock in a corporation engaging in such a business, for five years within a radius of 100 miles of Greeneville where the selling corporation's business was located. The business is stated in the contract to be the "recapping or repairing automobile truck tires."

About a year later the buying corporation filed its bill against Spurlin. Its complaint was that Spurlin, in violation of this agreement, is now engaged in Greeneville in that business. The prayer of the bill is that he be enjoined from violating the noncompetitive agreement into which he entered.

Spurlin's answer admitted that he is a member of a partnership which is conducting such business in Greeneville. His answer denies that this amounts to a violation of his contract with complainant because, so he says, the non-competitive agreement ''in the contract in question is unreasonable and void''; further that such clause is not necessary to protect complainant's business ''and is an unlawful restraint of trade and in violation of TCA Section 69-101, and of the Sherman Anti-Trust Act''. The code section mentioned forbids agreements which tend to lessen full and free competition in the sale or manufacture of articles or tend thereby to control the price.

The answer further insists that the agreement is void (1) for lack of valuable consideration and (2) because it deprives Spurlin of a means of livelihood; hence, contrary to public policy.

The case was set down for hearing on bill and answer. The Chancellor sustained the bill and granted the injunction to the full extent of the contract provisions. Spurlin's appeal is, therefore, directly to this Court where there are made the same insistences as those stated in the answer.

The lack of consideration contention is based upon the fact that it was the sale by one corporation of its assets

to another corporation; hence, that no consideration moved to Spurlin, a stockholder.

■ The foregoing contention is expressly rejected in *Scott v. McReynolds,* 36 Tenn.App. 289, 255 S.W.2d 401. Spurlin was one of the principal stockholders; thus, had an interest in the sale of the assets of the business. That sale afforded him a sufficient consideration, therefore, to enter into the non-competitive agreement.

■ The answer further seeks to interpose by way of explanation of the agreement certain negotiations and happenings preceding the entry into the contract which contains the non-competitive agreement and by such explanation to change its terms. The non-competitive agreement contains no ambiguities. Extrinsic evidence could not, therefore, have been received to vary its terms.

■ The assignments of error directed to the above insistences being overruled, the final question is whether equity will enforce this non-competitive agreement. In considering that question there must be recognized the fact that "each case must stand on its own facts involving contracts of this sort". *Herbert v. W. G. Bush & Company,* 42 Tenn.App. 1, 11, 298 S.W.2d 747, 751.

■ Generally speaking, "a covenant which is incidental to the sale and transfer of a trade or business, and which purports to bind the seller not to engage in the same business in competition with the purchaser, is lawful and enforceable", *Scott v. McReynolds,* supra, provided such covenants are reasonable and go no further than affording a fair protection to the buyer. *Bradford & Carson v. Montgomery Furniture Company,* 115 Tenn. 610, 632, 92 S.W. 1104, L.R.A.,N.S., 979.

194

■ The question as to the reasonableness of the restraint necessary to secure the buyer fair protection in receiving the benefits for which he made the purchase "is to be determined by reference to the nature of the business, the manner in which it has been conducted and its territorial extent". 36 American Jurisprudence, Section 65, page 545. In reaching that determination this Court is of the opinion that it may be judicially noticed that the "recapping or repairing automobile truck tires" is a common type of business, the carrying on of which is likely to be found in most of the counties of the State. It involves no trade secrets, so far as appears. It would seem, therefore, that a limitation of the restrictive covenant as to area so as to prohibit the prosecution of such business by Spurlin anywhere within 100 miles of Greeneville is excessive. It results in excluding probably a depth of two counties beyond, and on all sides of Greeneville.

Turning now to that part of the non-competitive agreement which provides that Spurlin and Marshall "will not engage, either directly or indirectly, either for themselves or as agents or servants of any party engaged in a similar business, or as the owner of stock in any corporation now existing or which may hereafter be formed * * * or any financing or promoting of any similar business in the business of recapping or repairing automobile truck tires for a period of five years * * *" etc., the question is whether Spurlin is correct in his insistence that under the facts of this case the prohibition is contrary to the public welfare, in that it inflicts upon him an unreasonable hardship in his endeavors to make a living.

To be considered in connection with that question is the averment in Spurlin's answer, and which in this proceedings must be accepted as a fact, that "the life work of the defendant has been in the recapping business, and this is his only means of livelihood, since he has only had limited educational opportunities."

■ While contracts restraining employment are looked upon with disfavor in modern law, *Kadis v. Britt*, 224 N.C. 154, 29 S.E.2d 543, 152 A.L.R. 405, "such contracts are sustained, in the absence of contrary statute and subject to the requirements as to limitations of time and space and as to reasonableness". 17 C.J.S. Contracts, sec. 239, p. 623.

■ While the area within which Spurlin is prohibited from carrying on or being employed in this business is in excess of that which seems necessary to fairly protect Greene County Tire and Supply, Inc., in procuring the benefits intended by the purchase of these assets in carrying on of such a common place business, yet, considering the modern facilities of travel, the obstacle as to distance from Greeneville which the limitation places upon Spurlin in the carrying on of, or employment in, such business does not seem to be such an obstacle as will inflict upon him an insurmountable obstacle.

Quite material, therefore, is the fact that Spurlin, for a valuable consideration, entered into this agreement which he now seeks to repudiate. So, as observed in the text of 78 A.L.R. page 1039, we are confronted here with the fact that

"two public interests are to be balanced against the one that is opposed to restrictive covenants—viz.: the policy of promoting honesty and fidelity among men,

and the interests of the public as a whole in an individual's being able to sell on the most advantageous terms whatever property he owns or has produced, whether tangible or intangible. As to these matters the assertion will hardly be questioned that, unless injury to the public manifestly outweighs the public policies of honesty and of freedom of alienation, restrictive covenants of the character here under consideration should be enforced.''

Under the facts of this case, and considering the nature of the business involved, the injury to the public or the inconvenience which will be experienced by Spurlin are with reference to public policies which weigh less than public policies with reference to maintaining honesty and of freedom of alienation. The result is that the restrictive covenants to which Spurlin agreed for a valuable consideration are binding upon him.

The decree of the Chancellor will accordingly be affirmed and cause remanded for such proceedings as may be necessary and the costs adjudged against Spurlin and the surety on his bond.